1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

LINDA ELAINE STITES-MOUNTS,

        Plaintiff,

   v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

        Defendant.

_____/

Case No. 1:22–cv–00630–SKO

ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT

(Doc. 1)

## I.      INTRODUCTION

Plaintiff Linda Elaine Stites-Mounts ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.      BACKGROUND

Plaintiff was born on April 13, 1955, can communicate in English, has a high school education, and previously worked as an executive assistant.  (Administrative Record ("AR") 26, 79, 90, 103, 199, 201, 202, 203, 217, 236, 644, 662.)  Plaintiff filed a claim for DIB payments on March 5, 2015, alleging she became disabled on July 1, 2013, due to the effects of back, knee, hip,

---

[1] The parties have consented to the jurisdiction of the U.S. Magistrate Judge.  (*See* Doc. 9.)

and joint pain, fibromyalgia, trigeminal neuralgia[2], and breast cancer treatments.  (AR 21, 23, 41, 79, 90, 91, 103, 104, 199, 200, 202, 217, 236, 632, 636, 640, 641, 677.)

Following a hearing, an Administrative Law Judge (ALJ) issued a written decision on October 4, 2017, finding Plaintiff not disabled.  (AR 16–28.)  Plaintiff appealed the decision to the district court, who, on March 19, 2020, remanded the case for further proceedings to evaluate the third-party testimony and statements.  (AR 711–25.)  Upon remand, the Appeals Council directed the assigned ALJ to offer Plaintiff the opportunity for a hearing and address the additional evidence submitted, take any further action needed to complete the administrative record and issue a new decision.  (AR 728.)  The ALJ held a hearing and issued a new written decision once again finding Plaintiff not disabled.

**A.    Relevant Medical Evidence[3]**

In February 2015, Plaintiff presented for an appointment with her primary care physician.  (AR 365–73.)  She complained of dizziness and joint pain at her lower extremities.  (AR 365.)  Plaintiff's medications were adjusted to address knee pain and dizziness.  (AR 373.)

In May 2015, Plaintiff presented for an orthopedic evaluation by Vincente R. Bernabe, D.O.  (AR 292–97.)  Dr. Bernabe observed that Plaintiff had a normal tandem gait; she was able to perform heel and toe walking without difficulty; she walked across the room without difficulty; and she was able to ambulate without an assistive device.  (AR 294.)  He opined that Plaintiff could perform medium exertional work, could frequently bend and stoops; and frequently perform agility activities.  (AR 297.)

Plaintiff underwent a psychological evaluation by J. Zhang, Psy.D., in August 2015.  (AR 300–306.)  No mental health treatment history was reported.  (AR 301.)  Plaintiff stated that she has a "few friends" and "socializes regularly."  (AR 301.)  Dr. Zhang noted that Plaintiff is able to take care of her basic grooming and hygiene needs, drive herself, go out alone, pay bills and manage

[2] Trigeminal neuralgia "is a chronic pain condition that affects the trigeminal or 5th cranial nerve, one of the most widely distributed nerves in the head . . ." and "causes extreme, sporadic sudden burning or shock-like facial pain that lasts from a few seconds to two minutes per episode[.]"  *Elliott v. Life Ins. Co. of N. Am., Inc*., No. 16-CV-01348-MMC, 2019 WL 2970843, at *3 (N.D. Cal. July 9, 2019) (internal quotation marks and citations omitted).

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

money appropriately and responsibly, and prepare simple meals.  (AR 302.)  Upon examination, Plaintiff was able to perform the serial sevens exercise, perform simple calculations, and spell the word "world" forward, but not backwards.  (AR 302.)  Her performance on the Wechsler Memory Scale (4th edition) showed that her memory was mildly impaired.  (AR 304–305.)  Dr. Zhang's evaluation "did not find any significant mental impairment" and they opined only mild impairments in mental functional areas.  (AR 305–06.)

Plaintiff attended a cardiology consult in October 2015.  (AR 550–54.)  Her fibromyalgia diagnosis was noted  (AR 550), and she was treated with Lyrica, but experienced edema (AR 550).

In June 2016, Plaintiff presented for a follow-up appointment after treatment for breast cancer.  (AR 610–11.)  She reported that she "fatigues readily, but has good days and bad days, which she attributes to her fibromyalgia."  (AR 610.)

A physical examination by an orthopedist in March 2017 showed Plaintiff was alert, cooperative, and fully oriented.  (AR 943.)  In April 2017, Plaintiff established care with an arthritis specialist for evaluation of polyarthralgia.  (AR 1165–66.)  She complained of morning time joint stiffness.  (AR 1165.)  Upon examination, no synovitis was found, but multiple tender soft tissue points were noted.  (AR 1166.)  Her muscle strength was intact.  (AR 1166.)

Plaintiff presented for a follow-up appointment with an arthritis specialist in June 2017.  (AR 1171–72.)  She complained of dull and burning pain in her legs that was rated an 8/10.  (AR 1171.)  Upon examination, bilateral knee crepitus was noted, as well as multiple soft tissue points.  (AR 1171.)  No synovitis was indicated, and Plaintiff's muscle strength was intact.  (AR 1171.)  It was noted that Plaintiff was taking Gabapentin for fibromyalgia.  (AR 1171.)

In August 2017, Plaintiff reported to her physical therapist that she would be "out of town for the next couple of weeks."  (AR 966.)

In January 2018, Plaintiff presented for another appointment with the arthritis specialist.  (AR 1173–74.)  She reported feeling "worse [and] unable to function."  (AR 1173.)  She complained of dull, sharp, constant, and burning diffuse body pain that is worse with activity.  (AR 1173.)  Plaintiff rated the pain a 7/10.  (AR 1173.)  Her physical examination results were the same as the prior visit.  (AR 1173–74.)  In May 2018, Plaintiff's oncologist documented that Plaintiff

had normal mood and intact cognition.  (AR 1279–80.)  She was also noted to be "completely ambulatory."  (AR 1279.)

Plaintiff again presented to the arthritis specialist in August 2018.  (AR 1117–18.)  She complained of fatigue, joint pain, joint swelling, muscle pain, muscle weakness, skin rash when exposed to sun, tingling, and numbness.  (AR 1177.)  Plaintiff rated her pain a 5-6/10.  (AR 1177.)  Her physical examination results remained unchanged.  (AR 1178.)

In November 2018, Plaintiff returned to the arthritis specialist complaining of dull, sharp, and constant diffuse body pain that is worse with activity.  (AR 1182.)  Plaintiff rated the pain an 8/10.  (AR 1182.)  Her physical examination results remained unchanged.  (AR 1182.)

Later that month, Plaintiff presented to an oncology specialist complaining of left knee pain.  (AR 1288–90.)  Upon examination, Plaintiff had normal sensation and muscle tone, with full muscle strength.  (AR 1289.)  Her pulses were normal in her upper and lower extremities, and no joint swelling, deformity, edema, cyanosis, or clubbing was noted.  (AR 1289.)  Plaintiff denied anxiety, depression, hallucinations, and paranoia.  (AR 1288.)  She was noted to be "completely ambulatory."  (AR 1288, 1289.)

In December 2018, an examination by Plaintiff's cardiology specialist indicated Plaintiff had "[n]o psychological symptoms" and exhibited euthymic mood.  (AR 1120.)

Plaintiff presented to the emergency department in March 2019 complaining of vision changes.  (AR 1046–64.)  Plaintiff denied chest pain, palpitations, arthralgias, myalgias, dizziness, and headaches.  (AR 1047.)

In January 2020, Plaintiff again complained of left knee pain to her oncology specialist.  (AR 1300–1302.)  Upon examination, Plaintiff had normal sensation and muscle tone, with full muscle strength.  (AR 1301.)  She was noted to be "completely ambulatory."  (AR 1300.)  Her pulses were normal in her upper and lower extremities, and no joint swelling, deformity, edema, cyanosis, or clubbing was noted.  (AR 1301.)

Later than month, Plaintiff followed up with her arthritis specialist.  (AR 1186–87.)  She complained of joint pain, muscle pain, tingling, and numbness.  (AR 1186.)  Plaintiff rated her pain an 8 out of 10.  (AR 1186.)  Upon examination, bilateral knee crepitus was noted, as well as multiple

soft tissue points.  (AR 1186–87.)  No synovitis was indicated, and Plaintiff's muscle strength was intact.  (AR 1187.)

In July 2020, Plaintiff presented for a telehealth visit with her arthritis specialist.  (AR 1188–89.)  She reported "[d]oing well" and taking care of her husband with gastric cancer.  (AR 1189.)  Plaintiff presented for a cardiology follow-up appointment in September 2020.  (AR 1200–1210.)  Her neurological examination was normal, with no sensory abnormalities noted.  (AR 1205–1206.)

In January 2021, Plaintiff presented for another appointment with her oncology specialist.  (AR 1315–17.)  She denied memory loss, anxiety, depression, hallucinations, and paranoia.  (AR 1315.)  In September 2021, Plaintiff reported to her physical therapist that she was experiencing a burning sensation in the balls of her feet, right knee pain, and a lower backache.  (AR 1236.)  She stated that she "may be going through a fibromyalgia flare up."  (AR 1236.)

**B.     Plaintiff's Statements**

**1.     June 2015 Adult Function Report**

In June 2015, Plaintiff completed an adult function report.  (AR 227–35.)  Plaintiff reported that fibromyalgia pain has "severely limited [her] mobility" and that it is "extremely difficult for [her] to sit, stand, or walk."  (AR 227.)  She also reported nerve pain; difficulty sleeping due to pain; and difficulty stooping, bending, climbing, and driving long distances.  (AR 228, 229, 232.)  When asked to describe what she does from the time she wakes until she goes to bed, Plaintiff reported she sits, reads, watches television, performs "limited light housework [with] many sitting breaks in between," and occasionally cooks.  (AR 228.)

Plaintiff prepares simple meals daily, performs light housework, and does laundry.  (AR 229.)  She can drive short distances, go out alone, and shop in stores weekly.  (AR 229–30.)  She can handle her finances.  (AR 230.)  She spends time with others, and regularly goes to church, Starbucks, restaurants, and her grandchildren's' sporting events.  (AR 231.)

Plaintiff denied she had problems getting along with friends, family, neighbors, or others.  (AR 232.)  She also denied she had difficulty handling stress or changes in routine.  (AR 233.)  Plaintiff reported that the impairments require her to use an assistive device when "a lot of walking

is necessary." (AR 233.)  According to Plaintiff, she can walk one hundred to two hundred feet before needing a rest.  (AR 232.)

### 2.  October 2016 Letter

Plaintiff wrote a letter in October 2016 to her disability adjudicator inquiring about the status of her claim.  (AR 182.)  She wrote that she had "followed [her] doctor's recommendations and directions every step of the way but continue to wake up screaming with severe knots and cramps in [her] legs."  (AR 182.)  She continued:

> I've participated in physical therapy and even went for a mental evaluation upon the request of your office and the doctor did nothing but insult my intelligence.  I assure you that I do not have a mental condition that prevents me from working, nor am I too stupid (he challenged my IQ level for the responsibilities that I had) to hold a job.
>
> [. . .]
>
> My health has become more challenging daily as I am in constant pain which is why I can't work.  It has nothing to do with any mental illness or depression as he tried to claim.

(AR 182.)

### C.  Plaintiff's Husband's Statement

Plaintiff's husband also completed a function report in June 2015.  (AR 219–226.)  He stated that Plaintiff sometimes babysits their grandchildren.  (AR 220.)  Plaintiff's husband reported that Plaintiff can prepare meals that did not require standing for prolonged periods, and is able to perform cleaning chores such as washing clothes (30 minutes) and wiping counter (5 to 10 minutes). (AR 221.)  She can drive a car and shop in stores for up to two and a half hours weekly.  (AR 222.) According to Plaintiff's husband, Plaintiff attends church and visits their daughter's house.  (AR 223.)  He stated that Plaintiff can walk about one hundred feet before needing a rest, and she requires an assistive device, including a walker, cane, and electric cart, for ambulation.  (AR 225.)

### D.  Administrative Proceedings

The Commissioner denied Plaintiff's application for benefits initially on May 29, 2015, and again on reconsideration on December 14, 2015.  (AR 16, 120–23, 125–29.)  Following a hearing on March 10, 2017 (AR 34–78), an ALJ issued a written decision on October 4, 2017,

finding Plaintiff not disabled.  (AR 16–28.)  Plaintiff appealed the decision to the district court, who, on March 19, 2020, remanded the case for further proceedings to evaluate the third-party testimony and statements.  (AR 711–25.)  Upon remand, the Appeals Council directed the assigned ALJ to offer Plaintiff the opportunity for a hearing and address the additional evidence submitted, take any further action needed to complete the administrative record and issue a new decision.  (AR 728.)

On February 1, 2022, Plaintiff appeared with counsel and testified before the ALJ as to her alleged disabling conditions.  (AR 653–62.)  A vocational expert also testified.  (AR 662–68.)

**1.     Plaintiff's March 2017 Testimony**

At the March 10, 2017, hearing, Plaintiff testified that she "doesn't struggle with depression at all, that's not [her] issue," and that "just physical problems" prevent her from working.  (AR 50.) She testified that she cooked, performed limited household chores such as dusting, laundry, and vacuuming.  (AR 55–56.)  According to Plaintiff, she only goes shopping with her husband.  (AR 55.)  In her free time, Plaintiff watches her grandchildren's sporting events and had been camping over Thanksgiving in a travel trailer.  (AR 57–58.)

Plaintiff testified that she struggled to walk from her car to her grandchild's classroom when she volunteers at their school.  (AR 60.)  She further testified that she and her husband babysit their grandchildren.  (AR 60.)

**2.     Plaintiff's February 2022 Testimony**

Plaintiff testified that she was being treated with medication for fibromyalgia.  (AR 659.) She said that daily pain makes it difficult to sit, stand, walk, sleep, and concentrate to some degree. (AR 659.)  Plaintiff testified that she feels fatigued every day because pain interferes with her ability to sleep.  (AR 659, 660.)

According to Plaintiff, she has not been treated formally for any psychological problems but that her treating physician has "tried different things," such as medications.  (AR 661.)

**3.     Vocational Expert's February 2022 Testimony**

A Vocational Expert ("VE") testified at the hearing that Plaintiff had past work as an executive (administrative) assistant, Dictionary of Operational Titles (DOT) code 169.167-010,

which was sedentary exertional work (light as performed) with a specific vocational preparation (SVP)[4] of 7.  (AR 662–63.)

The ALJ asked the VE to consider a person of Plaintiff's age, education, and with her work experience.  (AR 664.)  The VE was also to assume this person was capable of light exertional work except: the individual is able to stand and walk for two hours total in an eight-hour workday; is never able to climb ladders, ropes, or scaffolds; may occasionally climb ramps or stairs. occasionally balance, stoop, kneel, crouch, or crawl; occasionally push and pull with the bilateral lower extremities; and may have no exposure to vibration, unprotected heights and moving or heavy machinery.  (AR 664.)  The VE testified that such a person could perform Plaintiff's past relevant work.  (AR 664.)

The ALJ asked, in a second hypothetical, whether a person could perform Plaintiff's past work if the exertional level in the first hypothetical was changed from light to sedentary.  (AR 664–65.)  The VE responded that such a person could perform Plaintiff's past work as generally performed in the national economy, but not as performed because of the requirement to lift boxes or packages up to 20 pounds.  (AR 665.)  In a third hypothetical, the ALJ asked the VE to consider the same limitations as hypothetical number one plus the additional limitation that the individual would be off-task 20 percent of the workday.  (AR 665.)  The VE testified that there would be no work that such an individual could perform.  (AR 665.)

Plaintiff's counsel asked the VE whether the individual in either of the first two hypotheticals who required an unscheduled break of 45 minutes a day every day on a "random basis" could perform Plaintiff's work.  (AR 665–66.)  The VE testified that there would be no work such a person could perform.  (AR 666.)  The VE also testified that a limitation to unskilled work would also eliminate Plaintiff's past work.  (AR 666.)  The VE further testified that time off task of 15 percent or more, or a difficulty concentrating 25 percent of the workday, would preclude Plaintiff's past work.  (AR 666.)

---

[4] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991).  Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation).  *Id.*

**E.      The ALJ's Decision**

In a decision dated February 28, 2022, the ALJ once again found that Plaintiff was not disabled, as defined by the Act.  (AR 629–45.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520.  (AR 631–45.)  The ALJ decided that Plaintiff met the insured status requirements of the Act through December 31, 2018, and she had not engaged in substantial gainful activity during the period from her alleged onset date of July 1, 2013, through her date last insured of December 31, 2018 (step one).  (AR 631.)  At step two, the ALJ found Plaintiff's following impairments to be severe: fibromyalgia; status post total right knee replacement; status post total left knee replacement and repair of tendon rupture; bilateral knee osteoarthritis; degenerative disc disease of the lumbar spine; obesity; trigeminal neuralgia; left breast cancer, status post lumpectomy; hypertension; polyarthralgia; and heart disease.  (AR 632–34.)  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 634–35.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[5] and applied the assessment at steps four and five.  *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that, through the date last insured, Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§] 404.1567(b) except [Plaintiff] is able to stand and walk for 2 hours total in an 8 hour workday; is never able to climb ladders, ropes, or scaffolds; may occasionally climb ramps or stairs; occasionally balance, stoop, kneel, crouch or crawl; occasionally push and pull with the bilateral lower extremities; and may have no exposure to vibration, unprotected heights and moving or heavy machinery.

---

[5] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.  TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id*.  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

(AR 635–44.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" they rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record . . . ."  (AR 638.)  The ALJ determined that, given her RFC, Plaintiff was able to perform her past relevant work of executive assistant as generally performed (step four).  (AR 644.)  The ALJ concluded Plaintiff was not disabled at any time from July 1, 2013, the alleged onset date, through December 31, 2018, the date last insured.  (AR 644–45.)

Because Plaintiff did not seek review of the ALJ's decision before the Appeals Council, the decision became the final decision of the Commissioner.  20 C.F.R. § 404.981.

### III.   LEGAL STANDARD

**A.   Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

"In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility [for disability benefits], the Commissioner" is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."  *Id.* § 423(d)(2)(B).  For purposes of this determination, "a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* § 423(d)(3).

"The Social Security Regulations set out a five-step sequential process for determining

whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by

inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted).  Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).  Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff contends that the ALJ's RFC determination is unsupported by substantial evidence because the ALJ failed to consider relevant medical evidence of record.  (Doc. 13 at 14–17.) Plaintiff further asserts that the ALJ erred in discounting her subjective symptom testimony.  (*See id*. at 17–20.)

The Acting Commissioner responds that that the ALJ's RFC determination is supported by substantial, relevant evidence in the record.  (Doc. 17 at 4–7.)  The Acting Commissioner further contends that the ALJ's discounting of Plaintiff's subjective symptom statements was not erroneous.  (*Id*. at 7–9.)

The Court addresses the parties' contentions below, and finds that reversal is not warranted.

///

**A.      The ALJ Did Not Err in Formulating Plaintiff's RFC**

An RFC "is the most [one] can still do despite [their] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 404.1545(a)(1); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").   An ALJ's RFC determination need not precisely reflect any particular medical provider's assessment.  *See Turner v. Comm'r Soc. Sec. Admin*., 613 F.3d 1217, 1222-23 (9th Cir. 2010) (the ALJ properly incorporated physician's observations in the RFC determination while, at the same time, rejecting the implication that plaintiff was unable to "perform simple, repetitive tasks in an environment without public contact or background activity").

In making the RFC determination, the ALJ considers those limitations for which there is record support that does not depend on properly rejected evidence and subjective complaints.  *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004).  A reviewing court "will affirm the ALJ's determination of [a claimant's] RFC if the ALJ applied the proper legal standard and his decision is supported by substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

**1.         Fibromyalgia**

Plaintiff asserts that the ALJ's RFC assessment is erroneous first because it lacks functional restrictions resulting from her severe impairment of fibromyalgia.  (*See* Doc. 13 at 14.)  Not so.

The nature of the ALJ's responsibility is to interpret the evidence of record, including medical evidence.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Such a responsibility does not result in the ALJ committing legal error when they assess an RFC that is consistent with the record.  *See Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 (E.D. Cal. Aug. 22, 2014) ("[I]t is the ALJ's responsibility to formulate an RFC that is based on the record as a whole, and thus the RFC need not exactly match the opinion or findings of any particular medical source.") (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989)).

Here, the ALJ deemed fibromyalgia a severe impairment at step two (AR 632–34), and went on to discuss the medical evidence throughout the relevant period demonstrating that, despite

her complaints of fibromyalgia symptoms, Plaintiff's physical examination results showed full muscle strength, complete ambulation, normal sensation, normal muscle tone, normal pulses, and no joint swelling, synovitis, deformity, edema, cyanosis, or clubbing.  (AR 294, 1166, 1171, 1173–74, 1178, 1182, 1187, 1205–06, 1279, 1289, 1301.)  The ALJ also evaluated the medical opinions of State agency physicians Drs. Laiken and Brodsky; consultative examiner Dr. Bernabe; and Plaintiff's treating physician Dr. Branch.  (*See* AR 641–43.)  The ALJ considered the weight of these opinions, as the ALJ is charged to do, and rejected limitations to medium or the full range of light exertional activity, finding instead that the opinions—as well as the evidence of record showing Plaintiff's "orthopedic impairments" and her "subjective allegations of pain"—supported a finding of light work with additional limitations.  (AR 642.)  The ALJ then formulated Plaintiff's RFC, which included additional physical limitations beyond those found by opining physicians and those directed to her allegations of fibromyalgia pain.  (*Compare* AR 635 *with* AR 642.)[6]  *See Mills,* 2014 WL 4195012, at *4 (finding argument that the ALJ erred in formulating an RFC lacked merit where the ALJ "carefully analyzed the various medical opinions, treatment records, and plaintiff's own testimony in formulating an RFC.").  *See also* 20 C.F.R. § 404.1527(d)(2) ("the final responsibility for deciding [RFC] is reserved to the Commissioner), § 404.1545(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record.").

Plaintiff does not challenge the ALJ's treatment of the medical opinion evidence.  Instead, she asserts that the ALJ "bases her residual functional capacity assessment to a large extent on the opinions of the state agency medical consultants who were neither examining nor treating physicians between May and December of 2015." (Doc. 13 at 14.)  Such contention is belied by the record.  As set forth above, the ALJ expressly rejected portions of state agency physician Dr. Brodsky's opinion, finding a more restrictive RFC than they opined.  (*See* AR 642.)

Plaintiff further contends that the ALJ "ignored and rejected substantial evidence of record in this case documenting [her] fibromyalgia symptoms as well as her lower extremity symptoms." (Doc. 13 at 15.)  Plaintiff, however, does not identify a single piece of evidence that the ALJ

---

[6] The ALJ's RFC assessment is also based on consideration of Plaintiff's subjective complaint testimony, which, as set forth more fully below, the ALJ properly discredited.

allegedly ignored or rejected.  The ALJ's decision makes clear that they considered <u>all</u> relevant evidence of record—including those which post-dated the adjudicative period.  (*See, e.g*., AR 639–41 (discussing medical records from 2019–2021).)  Plaintiff has not shown otherwise, or that the ALJ's RFC assessment did not consider her fibromyalgia symptoms.

### 2.      Affective Disorder

Plaintiff next contends that the ALJ's RFC determination is unsupported by substantial evidence because the ALJ failed to consider the effects of Plaintiff's non-severe affective disorder.  (Doc. 13 at 15–16.)  The Court disagrees.

The ALJ stated in their RFC findings that they "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence . . . ."  (AR 635.)  But the medical record as summarized by the ALJ contains almost no evidence of Plaintiff's affective disorder symptomatology to be considered.  The consultative examiner Dr. Zhang "did not find any significant mental impairment" and they opined only mild impairments in mental functional areas—an opinion which is unchallenged by Plaintiff.  (AR 305–06.)  The objective medical evidence also shows a dearth of affective disorder symptoms.  For example, mental status examinations throughout the relevant period documented Plaintiff's normal mood, intact cognition,  and lack of "psychological symptoms."  (AR 1120, 1279–80.)  There is no record of any formal mental health treatment.  (AR 301, 661.)

Perhaps most compellingly, as the ALJ points out (*see* AR 633, 634, 636), Plaintiff herself has consistently disavowed any mental impairment symptomatology throughout the relevant period (and even as recently as January 2021).  She did not identify any complaints of mental problems to the consultative examiner.  (AR 300.)  She denied anxiety, depression, hallucinations, paranoia, and memory loss during medical appointments.  (AR 1288, 1315.)  She stated in her function report that she does not have any problem getting along with others, nor does she have difficulty handling stress or changes in routine.  (AR 233.)  She testified at the first hearing that she "doesn't struggle with depression at all, that's not [her] issue," and that "just physical problems" prevent her from working.  (AR 50.)  And she wrote to her disability adjudicator that she "do[es] not have a mental condition that prevents [her] from working" and that her inability to work "has nothing to do with

any mental illness or depression."  (AR 182.)

Plaintiff again does not identify what "evidence of Plaintiff's diagnosed mental impairments" that the ALJ "wholly ignored."  (Doc. 13 at 16.)  Moreover, mere diagnosis alone does not establish a limitation in the ability to work.  *See Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985) (mere diagnosis of an impairment does not show disability).

Plaintiff's reliance on *Hutton v. Astrue*, 491 Fed. App'x 850 (9th Cir. 2012) is unavailing.[7] (Doc. 13 at 16.)  There, the Ninth Circuit found an ALJ erred by failing to include the claimant's post-traumatic stress disorder (PTSD) in the assessment of the claimant's RFC.  At step two the ALJ determined the claimant's PTSD existed but was nonsevere pursuant to 20 C.F.R. § 404.1520a(c)(3).  The court observed that pursuant to 20 C.F.R. § 404.1545(a)(2), the ALJ was required to consider the PTSD in determining the claimant's RFC, but he did not.  *Id*. at 850–51. Instead, the ALJ discredited the claimant, his treating physicians' opinions and the Veterans Administration's disability rating.  *Id*. at 850.  The court did not, however, base its reversal on these actions by the ALJ.  *Id*.  Instead, the court took exception to the ALJ's mischaracterization of the claimant's wife's testimony, finding that the claimant lacked credibility.  *Id*.  The ALJ found the claimant's PTSD claims were "in great doubt" and excluded the claimant's PTSD from consideration.  *Id*.  The Ninth Circuit held this was legal error.

Here, the ALJ specifically considered Plaintiff's non-severe mental impairments in evaluating Plaintiff's RFC and did not confine their assessment to the adverse credibility determination.  In particular, in addition to Plaintiff's repeated denials of mental impairment set forth above, the ALJ considered the opinion of consultative examiner Dr. Zhang, who opined that Plaintiff's mental impairments only mildly impaired her ability to function. (AR 634.)  The ALJ specifically noted at the conclusion of his step two analysis that their RFC assessment "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (AR 634.)  Although the ALJ did not extensively discuss Plaintiff's mental impairments at step four, they thoroughly discussed the evidence supporting their findings at step two and incorporated them by reference in their RFC analysis.  An ALJ is required to discuss and evaluate evidence that

---

[7] *Hutton* is an unpublished decision that is not binding precedent on this Court.  *See generally* Fed. R. App. P. 32.1

supports their conclusion; they are not required to do so under any specific heading . *See Lewis v. Apfel*, 236 F.3d 503. 513 (9th Cir. 2001).  The Court finds the ALJ considered Plaintiff's mild mental limitations in their RFC analysis.[8]

In sum, the Court finds that the ALJ supported their determination that Plaintiff was capable of limited light work with substantial evidence in the record.  Plaintiff does not demonstrate otherwise.  She does not specify what additional functional limitations resulting from her fibromyalgia or affective disorder that were not accounted for in the ALJ's RFC assessment.  Nor does she otherwise show any inconsistency between the medical record and her RFC.  To the extent Plaintiff is advocating for an alternative interpretation of the evidence in the record, the Court will not second guess the ALJ's reasonable interpretation, even if such evidence could give rise to inferences more favorable to Plaintiff.  *See Molina*, 674 F.3d at 1110.  Nor is the ALJ required to discuss each piece of medical evidence in the record, as Plaintiff's briefing suggests.  *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).  While Plaintiff may disagree with the RFC, the Court must nevertheless uphold the ALJ's determination because it is a rational interpretation of the evidence.  *See Ford v. Saul*, 950 F.3d 1141, 1159 (9th Cir. 2020) ("Our review of an ALJ's fact-finding for substantial evidence is deferential"); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

**B.     The ALJ Properly Discredited Plaintiff's Testimony**

**1.     Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged.  *Id*.  The claimant is not required to show their impairment "could reasonably be expected to cause the severity of the symptom [they] ha[ve] alleged; [they] need only show that it could reasonably have caused some degree of the symptom."  *Id*. (quoting *Lingenfelter v. Astrue*, 504

---

[8] Plaintiff also cites *Gates v. Berryhill*, No. ED CV 16-00049 AFM, 2017 WL 2174401, at *2 (C.D. Cal. May 16, 2017) (Doc. 13 at 16), which relies on *Hutton* and is distinguishable for the same reason discussed above.

F.3d 1028, 1036 (9th Cir. 2007)).  If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection.[9]  *Id*.  As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009).  Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'"  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).  General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'"  *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**2.    Analysis**

As set forth above, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  (AR 638.)  The ALJ also found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 638.)  Since the ALJ found Plaintiff's "medically determinable impairments could reasonably

---

[9] The Court rejects the Acting Commissioner's contention that a lesser standard of review applies.  (*See* Doc. 17 at 7 n.3.)

be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding.  *See Vasquez*, 572 F.3d at 591.

Here, the ALJ found Plaintiff's statements not credible because they are inconsistent with both the medical evidence and her reported daily activities.  (AR 28–29.)  The Court takes each finding in turn.

a.   Inconsistency with Medical Evidence

Plaintiff testified that daily pain makes it difficult for her to sit, stand, walk, sleep, concentrate, stoop, bend, climb, and drive long distances.  (AR 60, 227, 228, 229, 232, 659.) However, the ALJ found Plaintiff's subjective symptom testimony to be inconsistent with "other evidence and the observations of others," as well as with evidence of Plaintiff's "improved condition."  (AR 636, 637.)

An ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of [the impairment]."  *Burch*, 400 F.3d at 680. Nonetheless, "lack of medical evidence . . . is a factor that the ALJ can consider in his credibility analysis.  *Burch*, 400 F.3d at 681.  *See also Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  Stated differently, "[a]lthough the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, it is one factor which may be considered with others."  *Salas v. Colvin*, No. 1:13–cv–00429–BAM, 2014 WL 4186555, at *6 (E.D. Cal. Aug. 21, 2014) (citations omitted).

Here, as summarized by the ALJ and detailed above (*see* Section 4.A.1, *supra*), the record shows complete ambulation, full muscle strength, normal muscle tone, normal pulses, and no joint swelling, synovitis, deformity, edema, cyanosis, or clubbing.  (AR 294, 1166, 1171, 1173–74, 1178, 1182, 1187, 1205–06, 1279, 1289, 1301.)  Consultative examiner Dr. Bernabe noted that Plaintiff exhibited a normal tandem gait; she was able to perform heel and toe walking without difficulty; she walked across the room without difficulty; and she was able to ambulate without an assistive device.  (AR 294.)

As the ALJ observed, the record also shows that Plaintiff's condition had improved.  In March 2019, Plaintiff denied chest pain, palpitations, arthralgias, myalgias, dizziness, and headaches.  (AR 1047.)  She reported "[d]oing well" in July 2020 and taking care of her husband with gastric cancer.  (AR 1189.)  *See* 20 C.F.R. § 404.1529(c)(3)(iv); *see also Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Morgan*, 169 F.3d at 599 (ALJ's adverse credibility determination properly accounted for physician's report of improvement); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming denial of benefits and noting that claimant's impairments were responsive to treatment).

The Court finds the ALJ's conclusion that the evidentiary record undermines Plaintiff's subjective statements and testimony is supported by substantial evidence.  It is therefore one of two clear and convincing reasons for discounting Plaintiff's subjective symptom testimony.  *See Molina*, 674 F.3d at 1113 (concluding that the ALJ properly discredited claimant testimony based on inconsistencies with objective medical evidence).

> b.    Activities of Daily Living

Next, the ALJ determined that Plaintiff's activities of daily living as described by her (and her husband) were "specifically inconsistent with [Plaintiff's] subjective complaints about chronic pain rendering her unable to perform activities of daily life."  (AR 637.)  As summarized by the ALJ, the record demonstrates Plaintiff is able to: take care of her basic grooming and hygiene needs (AR 302); prepare simple meals daily (AR 55–56, 229, 302); perform light housework, such as laundry, dusting, and vacuuming (AR 55–56, 221, 229); drive a car (AR 222, 229–30); and shop in stores weekly (AR 55, 222, 229–30).  She "socializes regularly," going to church, Starbucks, restaurants, and her grandchildren's' sporting events.  (AR 223, 231, 301.)  Plaintiff also babysits her grandchildren (AR 220), and travels out of town to stay for multiple weeks.  (AR 966.)  One such trip was a camping trip over the Thanksgiving holiday, staying in a travel trailer.  (AR 57–58.)

An ALJ may properly consider a claimant's daily activities when evaluating credibility.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (the nature of daily activities may be considered when evaluating credibility).  In evaluating a claimant's credibility, an ALJ may also consider

inconsistencies between the claimant's testimony and the claimant's conduct and whether the claimant engages in daily activities inconsistent with the alleged symptoms.  *Molina*, 674 F.3d at 1112.  Even where those activities suggest some difficulty functioning, they are grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment.  *Id.* at 1113.

The Court finds that Plaintiff's above-described activities tend to suggest that she may still be able to perform, on a sustained basis, the basic demands of her past relevant work as an executive assistant (*see* AR 644).  *See Fair*, 885 F.2d at 603 (finding that if a claimant has the ability to perform activities "that involved many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent her from working"); *see also, e.g., Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (finding that the ALJ sufficiently explained his reasons for discrediting the claimant's testimony because the record reflected that the claimant performed normal activities of daily living, including cooking, housecleaning, doing laundry, and helping her husband managing finances); *Morgan*, 169 F.3d at 600 (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility); *Kelly v. Astrue*, 471 F. App'x 674, 677 (9th Cir. 2012) (holding that ALJ properly made an adverse credibility finding because, in part, claimant's daily activities included driving, washing the dishes, shopping, and caring for her two children); *Nelson v. Colvin*, No. 1:15-cv-00696-SKO, 2016 WL 3407627, at *20 (E.D. Cal. June 20, 2016) (ALJ properly discredited subjective complaints of claimant who suffered from chronic back problems where claimant engaged in activities such as preparing simple meals, washing dishes, driving a car, shopping for groceries and household supplies 2–3 times a week, walking up to a mile, using a computer for about half an hour at a time, visiting with family, mopping and vacuuming, independently handling her own finances, and doing yoga tapes at home.).

As Plaintiff points out, the record also contains some contrary evidence, such as Plaintiff's statements that her ability to perform some household chores is hampered by pain.  (*See, e.g.,* AR 56, 228, 229.)  Yet the ALJ's decision properly recognized that she has some work limitations

because of such pain.  (*See* AR 643 (assessing an RFC for a "range of less than light work" because the ALJ "agrees that [Plaintiff] suffers from some pain and limitations").)  The Court concludes, however, that the ALJ properly discredited Plaintiff's testimony that her pain renders her *completely* unable to work.[10]  *Fair*, 885 F.2d at 604; *see also Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) ("So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence.").  Where the ALJ makes a reasonable interpretation of Plaintiff's testimony, it is not the Court's role to second-guess it.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all the activities and noting that the ALJ's interpretation "may not be the only reasonable one").

## V.    CONCLUSION AND ORDER

After consideration of Plaintiff's and the Acting Commissioner's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED.

The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:   **August 4, 2023**                    /s/ *Sheila K. Oberto*
                                      UNITED STATES MAGISTRATE JUDGE

---

[10] Plaintiff also attacks the ALJ's "rejection" of third-party statements, arguing that the ALJ "fail[ed] to properly consider them." (Doc. 13 at 20.)  Other than this naked assertion, devoid of any citation to the record, Plaintiff offers no argument to support her contention.  The Court declines to formulate one for her.  *See, e.g., Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("When reading [the plaintiff's] brief, one wonders if [the plaintiff], in its own version of the 'spaghetti approach,' has heaved the entire contents of a pot against the wall in hopes that something would stick. We decline, however, to sort through the noodles in search of [plaintiff's] claim.") (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim...[j]udges are not like pigs, hunting for truffles buried in briefs.")).  *See also Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim....");  *Hibbs v. Dept. of Hum. Resources,* 273 F.3d 844, 873 n.34 (deeming a one-sentence argument "too undeveloped to be capable of assessment.").